UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| FELIX PARMS | CIVIL ACTION |
| VERSUS | NO. 14-330-BAJ-RLB |
| CAROLYN W. COLVIN,<br>ACTING COMMISSIONER OF<br>THE SOCIAL SECURITY<br>ADMINISTRATION | |

## NOTICE

Please take note that the attached Magistrate Judge's Report and Recommendation has been filed with the Clerk of the U.S. District Court for the Middle District of Louisiana.

Under 28 U.S.C. § 636(b)(1), you have **14 days** from receipt of this Notice to file written objections to the findings of fact and conclusions of law recommended by the Magistrate Judge. A failure to object will constitute a waiver of your right to attack the factual findings on appeal.

**ABSOLUTELY NO EXTENSION OF TIME WILL BE GRANTED TO FILE OBJECTIONS TO THE REPORT AND RECOMMENDATION.**

Signed in Baton Rouge, Louisiana, on August 6, 2015.

 _____
 **RICHARD L. BOURGEOIS, JR.**
 **UNITED STATES MAGISTRATE JUDGE**

# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**FELIX PARMS**                                                                    **CIVIL ACTION**

**VERSUS**                                                                                  **NO. 14-330-BAJ-RLB**

**CAROLYN W. COLVIN,**
**ACTING COMMISSIONER OF**
**THE SOCIAL SECURITY**
**ADMINISTRATION**

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, Felix Parms (Plaintiff), seeks judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner), pursuant to 42 U.S.C. § 405(g), denying Plaintiff's application for disability insurance benefits "under Title II and part A of Title XVIII of the Social Security Act." (Tr. 203). For the reasons given below, the Court recommends that the Commissioner's decision be **AFFIRMED** and Plaintiff's appeal be **DISMISSED** with prejudice.

## I. PROCEDURAL HISTORY

On May 2, 2011, Plaintiff filed an application for disability insurance benefits. (Tr. 203-04). Plaintiff alleged that he became disabled as of May 1, 2010 because of prostate cancer. (Tr. 84). The claim was initially denied (Tr. 83) and Plaintiff filed a timely request for a hearing, which was held on February 29, 2012. (Tr. 63-82). Plaintiff, represented by counsel, appeared and testified at the hearing. (Tr. 67-78). Harris Rowzie, a Vocational Expert (VE), also provided testimony. (Tr. 79-81).

An unfavorable decision was rendered by the Commissioner, through the Administrative Law Judge (ALJ), on April 12, 2012. (Tr. 90).[1] The ALJ found that Plaintiff had not been under a disability since the alleged onset date of May 1, 2010, because Plaintiff did not suffer from any severe impairment. (Tr. 90-91). Plaintiff's request for review was granted by the Appeals Council on March 16, 2013 "under the abuse of discretion and new and material evidence provisions of the Social Security regulations." (Tr. 90-91). In its Order, the Appeals Council vacated the April 12, 2012 ALJ decision and remanded Plaintiff's application to a new ALJ. (Tr. 90-91).

A second hearing was held on August 19, 2013. (Tr. 33-62). Plaintiff, represented by counsel, appeared and testified at the hearing. (Tr. 36-38, 52-60). Vocational expert, Wendy Klamm (Tr. 47-51, 61), and medical expert, Dr. Ollie Raulston (Tr. 38-46), also provided testimony. The ALJ issued an unfavorable decision denying Plaintiff's application for a second time on September 26, 2013. (Tr. 21-27). Plaintiff's second request for review was denied by the Appeals Council on March 27, 2014. (Tr. 1-5). The ALJ's decision rested as the final decision when the Appeals Council denied Plaintiff's second request for review. See 20 C.F.R. § 404.981 ("The Appeals Council's decision, or the decision of the administrative law judge if the request for review is denied, is binding unless you . . . file an action in Federal district court . . . ."). The ALJ's final decision is now ripe for review under 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

This Court's review of the Commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401

---

[1] The first ALJ decision rendered on April 12, 2012 is not made part of the administrative record and is not available to the Court.

(1971); *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Substantial evidence has been defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. of N.Y. v. N.L.R.B.*, 305 U.S. 197, 229 (1938) (defining "substantial evidence" in the context of the National Labor Relations Act, 29 U.S.C. § 160(e))). The Fifth Circuit has further held that substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but no substantial evidence will be found only where there is a conspicuous absence of credible choices or no contrary medical evidence." *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983) (quotations omitted). Conflicts in the evidence are for the Commissioner "and not the courts to resolve." *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The court may not reweigh the evidence, try the case de novo, or substitute its own judgment for that of the Commissioner even if it finds that the evidence preponderates against the Commissioner's decision. *See, e.g.*, *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994) ("This is so because substantial evidence is less than a preponderance but more than a scintilla."); *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988) ("we must carefully scrutinize the record to determine if, in fact, such evidence is present; at the same time, however, we may neither reweigh the evidence in the record nor substitute our judgment for the Secretary's"); *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988) (same).

If the Commissioner's decision is supported by substantial evidence, then it is conclusive and must be upheld. *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000). If the Commissioner fails to apply the correct legal standards, or fails to provide a reviewing court with

a sufficient basis to determine that the correct legal principles were followed, it is grounds for reversal. *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987).

## III. ALJ'S DETERMINATION

In determining disability, the Commissioner, through the ALJ, works through a five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520(a)(4). The burden rests upon the claimant throughout the first four steps of this five-step process to prove disability. If the claimant is successful in sustaining his or her burden at each of the first four steps, the burden shifts to the Commissioner at step five. See *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991) (explaining the five-step process). First, the claimant must prove he is not currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). Second, the claimant must prove his or her impairment is "severe" in that it "significantly limits your physical or mental ability to do basic work activities . . . ." 20 C.F.R. § 404.1520(c). At step three the ALJ must conclude the claimant is disabled if he proves that his or her impairments meet or are medically equivalent to one of the impairments contained in the Listing of Impairments. See 20 C.F.R. § 404.1520(d) (step three of sequential process); 20 C.F.R. pt. 404, subpt. P, app. 1 (Listing of Impairments). Fourth, the claimant bears the burden of proving he is incapable of meeting the physical and mental demands of his or her past relevant work. 20 C.F.R. § 404.1520(f).

If the claimant is successful at all four of the preceding steps then the burden shifts to the Commissioner to prove, considering the claimant's residual functional capacity, age, education and past work experience, that he or she is capable of performing other work. 20 C.F.R § 404.1520(g)(1). If the Commissioner proves other work exists which the claimant can perform, the claimant is given the chance to prove that he or she cannot, in fact, perform that work. *Muse*, 925 F.2d at 789.

5

Here, the ALJ issued an unfavorable decision based on the evidence contained in the administrative record. Specifically, the ALJ found:

1. Plaintiff met the insured status requirements of the Act through December 31, 2014.

2. Plaintiff had not engaged in substantial gainful activity since May 1, 2010, the alleged onset date.

3. Plaintiff had the following severe impairments: moderate degree lumbar scoliosis, mild degenerative disc disease L1-S1, mild to moderate degenerative joint disease L3-4, history of prostate cancer status post radical prostatectomy and hypertension. Plaintiff's urinary incontinence, however, was not a severe impairment.

4. Plaintiff did not have an impairment that met or medically equaled a Listing—specifically, Listing 1.04 (Disorders of the Spine).

5. Plaintiff had the residual functional capacity to generally perform light work. Specifically, Plaintiff could lift 20 pounds occasionally and 10 pounds frequently; stand and/or walk for 6 hours and sit for 6 hours in an 8-hour workday; never climb ladders, ropes, and scaffolds; occasionally balance, stoop, kneel, crouch and crawl; frequently reach overhead with both arms; and be in an environment free of concentrated humidity.

6. Plaintiff was capable of performing his past relevant work as a residence supervisor (DOT No. 187.167-186), as it is generally performed in the national economy.

(Tr. 23-27).

## IV. DISCUSSION

Plaintiff raises several arguments in support of his appeal. Concerning the ALJ's step 4 finding, Plaintiff argues that the ALJ erred by failing to resolve a conflict between the testimony of the vocational expert at the first hearing and the vocational expert at the second hearing. (R. Doc. 12 at 12). Moreover, Plaintiff believes the ALJ's decision at the second hearing to obtain testimony from a vocational expert regarding his past work was inconsistent with the Order of the Appeals Council. (R. Doc. 12 at 16-18). Additionally, Plaintiff suggests the ALJ committed reversible error in applying the "as generally performed" standard to his past relevant work as a residence supervisor, as this was a "composite job." (R. Doc. 12 at 13-14). Next, Plaintiff

contends that the ALJ "misstated and omitted evidence in his analysis" when finding Plaintiff's urinary incontinence was not a severe impairment at step 2. (R. Doc. 12 at 15-16). Finally, Plaintiff argues that the ALJ committed reversible error by not informing Plaintiff in the Hearing Notice that the medical expert, Dr. Raulston, would testify by telephone. (R. Doc. 12 at 18-19). The Court will consider each of these arguments, although not in the order presented by Plaintiff.

### A. Step 2 — Urinary Incontinence

At step 2 of the sequential evaluation process the Commissioner must determine whether the claimant's "impairment or combination of impairments" is severe. According to the regulations, if the claimant does "not have any impairment or combination of impairments which significantly limits" his or her "physical or mental ability to do basic work activities," the Commissioner "will find" the claimant does "not have a severe impairment and [is], therefore, not disabled." 20 C.F.R. §§ 404.1520(c), 416.920(c). Basic work activities include:

(1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;

(2) Capacities for seeing, hearing, and speaking;

(3) Understanding, carrying out, and remembering simple instructions;

(4) Use of judgment;

(5) Responding appropriately to supervision, co-workers and usual work situations; and

(6) Dealing with changes in a routine work setting.

20 C.F.R. § 416.921(b)(1)-(6).

Despite the regulation's more stringent language, the Fifth Circuit and others have clarified: "An impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the

7

individual's ability to work, irrespective of age, education or work experience." *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985); *see also Anthony v. Sullivan*, 954 F.2d 289, 293 n.5 (5th Cir. 1992) (step 2 only requires a "de minimis showing"); *Brown v. Bowen*, 827 F.2d 311, 312 (8th Cir. 1987) ("only those claimants with slight abnormalities that do not significantly limit any basic work activity can be denied benefits without undertaking the subsequent steps of the sequential evaluation process.") (quoting *Bowen v. Yuckert*, 482 U.S. 137, 158 (1987)); *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) ("the severity requirement may still be employed as an administrative convenience to screen out claims that are 'totally groundless' solely from a medical standpoint").

"The severity determination is based solely on medical factors." *Fleetwood v. Barnhart*, 211 F. App'x 736, 739 (10th Cir. 2007). The claimant's "age, education, and work experience" cannot be considered. 20 C.F.R. §§ 404.1520(c), 416.920(c). In this case, the ALJ found Plaintiff's stress urinary incontinence was not severe because the medical evidence did "not support the alleged frequency of incontinence (six or more times daily bathroom breaks)," nor did it indicate that Plaintiff suffered from limitations because of incontinence. (Tr. 24-25). After reviewing the medical evidence, the Court finds substantial evidence supports the ALJ's non-severity finding.

Here, the medical evidence shows that Plaintiff reported a history of urinary incontinence on December 17, 2009, September 15, 2010 and March 15, 2011, as a result of his prostatectomy in 2006. (March 15, 2011, Tr. 416) (presenting for follow-up of prostate cancer (in remission) and referred to urologist for follow-up); (September 15, 2010, Tr. 417) (Plaintiff reported history of prostate cancer (in remission) and "urinary incontinence – being f/u by urology – doing well . . . return to clinic 6 months"); (December 2009, Tr. 418-19) (urinary incontinence status/post

radical prostatectomy). However, after examining Plaintiff on March 17, 2011, urologist Dr. Donald Elmajain noted:

> [Plaintiff] presents today for routine follow-up, stating that he has been doing well . . . . He reports rare stress urinary incontinence with large valsalvas, but states that this has not happened frequently enough to be a problem for him. He takes oxybutynin for some mild urgency and frequency, as well as nocturia, which he states has not been a problem since beginning his Ditropan.

(Tr. 388). Dr. Elmajian then diagnosed "rare" "stress urinary incontinence," before refilling Plaintiff's prescription for oxybutynin and advising Plaintiff to return to the "clinic in 1 year for reevaluation" of his stress urinary incontinence. (Tr. 388).

Consistent with Dr. Elmajain's findings, Plaintiff's urinary system was "normal" on examination in November of 2009, May of 2012 and June of 2012. (Tr. 425, 463, 465). Plaintiff reported "no incontinence" on March 18, 2010 (Tr. 393), November 5, 2012 (Tr. 506) and November 29, 2012 (Tr. 509). Plaintiff likewise told doctors on May 21, 2012 and June 5, 2012 that he had "no increase in urinary frequency." (Tr. 462, 464).

Much of Plaintiff's argument hinges on his own and his sister's reports of frequent and uncontrollable urination (Tr. 57-59, 68, 71-72, 470), along with the medical expert's testimony that urinary incontinence is likely a lifelong condition (Tr. 46). First, the subjective reports of Plaintiff and others are belied by the medical evidence discussed above and the ALJ's decision to discredit them is supported by substantial evidence. Second, even accepting the medical expert's testimony that Plaintiff's urinary incontinence is a lifelong condition, the record shows that its resulting limitations occur rarely and are otherwise controlled by medication — Oxybutynin and Ditropan. (Tr. 388, 400-04, 514). Therefore, the ALJ's finding that Plaintiff's stress urinary incontinence was not a severe impairment at step 2 is supported by substantial evidence, as the medical evidence suggests this condition is well controlled by medication and is not limiting. *See*

9

*Sellers v. Barnhart*, 246 F. Supp. 2d 1201, 1211 (M.D. Ala. 2002) ([S]everity . . . must be measured in terms of its effect . . . . [S]ubstantial evidence supports the ALJ's conclusion that the plaintiff's [conditions] are not severe impairments despite the medications prescribed," where none of the medical records "indicate functional limitations" caused by the conditions).

  B.  **Step 4 — Vocational Expert Testimony**

During the first hearing, the vocational expert classified Plaintiff's past relevant work at a half-way house as a "house parent; medium and [SVP 3]; [DOT No.] 359.677-010." (Tr. 79). Because the first ALJ ended his determination at step 2, however, no finding was made regarding Plaintiff's past relevant work. (Tr. 90). As part of its Remand Order (Tr. 90-91), the Appeals Council instructed: "If warranted by the expanded record, obtain evidence from a vocational expert to determine whether the claimant has acquired any skills that are transferable . . . to other occupations" and "ask the vocational expert to identify examples of [] appropriate jobs." (Tr. 90-91). In its Notice to Plaintiff (Tr. 89), the Appeals Council explained "why" it vacated the earlier ALJ's decision and remanded the claim, as well as, what the new ALJ was ordered to do about the claim. (Tr. 89). The Appeals Council also made clear to Plaintiff that "In addition to what we ordered the [ALJ] to do [on remand], the [ALJ] may also do *anything* else needed to complete the claim." (Tr. 89) (emphasis added). On remand and during the second hearing, a new vocational expert classified Plaintiff's same work at a half-way house as a "resident [sic] supervisor, in the DOT it is sedentary. . . skilled, SVP 6 and DOT 187.167-186." (Tr. 48). Although the position was generally performed at a sedentary level, the second vocational expert found that Plaintiff performed the position of 'residence supervisor' at a medium level. (Tr. 51).

In response to a hypothetical based on the residual functional capacity eventually found by the ALJ, the second vocational expert testified that Plaintiff could perform his past relevant

work as a residence supervisor, as "it is described in the Dictionary of Occupational Titles" — i.e., as it is generally performed in the national economy. Based on this testimony, the ALJ found at step 4 that Plaintiff was not disabled because he could perform the job of "resident [sic] supervisor . . . as generally performed" in the national economy. (Tr. 27).

Despite the Appeals Council's clear advisement that the ALJ may do "anything else needed to complete the claim," Plaintiff now argues that the ALJ violated the Order of the Appeals Council by taking additional VE testimony regarding his past relevant work. (R. Doc. 12 at 16-18). Plaintiff additionally argues that the ALJ committed reversible error by not resolving the "conflict" between the first and second VE's classification of his past relevant work. (R. Doc. 12 at 12-13).

First, the ALJ did not take action inconsistent with the Order of the Appeals Council by taking additional VE testimony regarding Plaintiff's past relevant work. As the Appeals Council made clear, the ALJ was free to do "anything else needed to complete the claim." (Tr. 89). In other words, the remand Order was not limited in scope. It simply pointed out certain issues that must be resolved. Moreover, the Appeals Council authorized the ALJ to render an entirely new decision and to conduct an additional hearing (Tr. 89-91). *See Valek v. Shalala*, 56 F.3d 1385, 1995 WL 337760, at *2 (5th Cir. 1995) (on remand from Appeals Council, ALJ was not limited to only those issues addressed by the remand Order; instead, the remand order was "unlimited in scope" where it "sent the case back to the ALJ 'for further proceedings, including a new decision'"). Therefore, the ALJ did not take action inconsistent with the Appeals Council's Order in taking VE testimony of Plaintiff's past relevant work.

Next, the ALJ was not required to resolve any conflict between the testimony of the first and second vocational experts. And even assuming for the sake of argument that this was an error, Plaintiff has not shown any resulting prejudice.

An Order of the Appeals Council does not "bind the ALJ to [an] earlier decision"; instead, "the ALJ ha[s] the authority on remand to review the case de novo" and is "free to reevaluate the facts." *Houston v. Sullivan*, 895 F.2d 1012, 1015 (5th Cir. 1989). This is because there is no rule of issue preclusion under the Social Security Act. *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991).

To begin, the original ALJ did not issue a finding as to the classification of Plaintiff's past relevant work or his ability to perform that work, as the evaluation was terminated at step two. (Tr. 90). The first ALJ also did not make a finding that the first VE's testimony was consistent with the Dictionary of Occupational Titles, or that the position of house parent was consistent with the duties performed by Plaintiff. Beyond that, the ALJ was not bound by the proceedings conducted by the first ALJ and had the authority to review Plaintiff's claim de novo. *See Houston*, 895 F.2d at 1015. And so, the ALJ was not required to resolve any conflict between the testimony of the first VE and the second VE. Rather, the Appeals Council made clear, with respect to VE testimony, that the ALJ was only required to "resolve any conflicts between the occupational evidence provided by the vocational expert and information in the [DOT] and its companion publication, the Selected Characteristics of Occupations (Social Security Ruling 00-4p)." (Tr. 91). The ALJ did what was required of him by stating in his decision that: "Pursuant to SSR 00-4p, the vocational expert's testimony is consistent with the information contained in the [DOT]." (Tr. 27).

Moreover, neither Plaintiff nor his attorney raised this issue before the ALJ, despite both the ALJ and the attorney's questioning of the VE being largely centered on Plaintiff's work for the half-way house. (Tr. 50-58). The Court will not now allow Plaintiff to present this conflict as reversible error when it "was not deemed sufficient to merit adversarial development during the administrative hearing." *See Carey v. Apfel*, 230 F.3d 131, 146-47 (5th Cir. 2000) ("[C]laimants should not be permitted to scan the record for implied or unexplained conflicts between the specific testimony of an expert witness and the voluminous provisions of the DOT, and then present that conflict as reversible error, when the conflict was not deemed sufficient to merit adversarial development in the administrative hearing.").

As a final matter, even if the ALJ erred by not discussing the conflicting testimony of the vocational expert, any error was harmless. First, the job classification provided by the first VE does not apply to Plaintiff's past relevant work. Second and as discussed below, regardless of how Plaintiff's former job could be classified under the DOT, he was still found capable of performing the position of residence supervisor — a finding that Plaintiff has not challenged.

The first VE testified that Plaintiff's past relevant work with a half-way home corresponded to the position of "house parent . . . [No.] 359.677-010" in the Dictionary of Occupational Titles. (Tr. 79). According to Plaintiff, his job at a half-way home required him to organize and/or oversee "client" activities, including meditation and Alcoholics Anonymous meetings; assist clients in getting to doctors' appointments, order and unload supplies, and oversee the facility both in general and while clients who were employed were away at work. (Tr. 52-57). In contrast, the DOT describes the position of house parent as: "Cares for group of *children* housed in city, county, private or other similar institution . . . . Awakens children each morning and ensures children are dressed, fed, and ready for school or other activity. . . .

13

Disciplines children and recommends or initiates other measures to control behavior. . . ." Dep't of Labor, *Dictionary of Occupational Titles* (DOT), No. 359.677-010 (Attendant-Children's Institute; Child-Care Attendant; House Parent) (emphasis added). Plaintiff clearly was not performing the job of house parent, considering his job duties listed above, in addition to the fact that the facility at which he was employed was inhabited by adults, including Plaintiff. (Tr. 52-56, 229, 276, 281). Instead, the duties associated with Plaintiff's past relevant work are consistent with those required of a residence supervisor: "Coordinates variety of activities for residents of . . . care and treatment institution . . . or similar establishment . . . . Orders supplies and determines need for maintenance, repairs, and furnishings. . . . [A]ssists in planning recreational activities . . . . [and] escort individuals on trips outside establishment for shopping or to obtain medical or dental services." DOT No. 187.167-186. As such, Plaintiff's overall job duties are clearly consistent with those of residence supervisor and the ALJ's decision to accept the VE's classification of Plaintiff's past relevant work as that of a residence supervisor was not erroneous.

### C.     Step 4 — Composite Job

At step 4, the ALJ ultimately found that Plaintiff could no longer perform the job of residence supervisor as he actually performed it, but Plaintiff was capable of performing the job as it is generally performed in the national economy. (Tr. 27). On appeal, Plaintiff claims that the ALJ erred in applying the "as generally performed standard" to his past job as a residence supervisor, as this position was a 'composite job.' (R. Doc. 12 at 13-14).

"[C]omposite jobs have significant elements of two or more occupations and, as such, have no counterpart in the [Dictionary of Occupational Titles (DOT)]." SSR 82-61, 1982 WL 31387, at *2 (Jan. 1, 1982). Because composite jobs do not have counterparts in the DOT,

14

Plaintiff is generally correct that the "as generally performed" standard is inapplicable. *See, e.g., Henry v. Colvin*, 2015 WL 3902731, at *3 (W.D. La. June 24, 2015) ("A composite job will not have a DOT counterpart, so do not evaluate it at the part of step 4 considering work 'as generally performed in the national economy.'" (quoting POMS DI 25005.020(B))).

Nonetheless, the above principle is irrelevant here, as the ALJ did not find and the VE did not testify that Plaintiff's past relevant work as a residence supervisor was a composite job. Instead, Plaintiff has unilaterally defined his past relevant work as a composite job before this Court — an argument he failed to present before the ALJ.[2] This finding was not made by the ALJ and it is not otherwise supported by the evidence of record. Additionally, Plaintiffs makes no argument that the ALJ erred by failing to identify his past relevant work as a composite job. For these reasons, the Court finds Plaintiff's classification of his PRW as a composite job is unfounded.

Here, the VE testified that Plaintiff's past relevant work at a half-way house corresponded to only one position in the Dictionary of Occupational Titles (DOT) — residence supervisor. (Tr. 48); U.S. Dep't of Labor, Dictionary of Occupational Titles (DOT), No. 187.167-186 (4th ed. rev. 1991) (Residence Supervisor). The VE testified that the position of residence supervisor is generally performed in the national economy at a sedentary level, according to the DOT, but that it might be classified as light according to some job descriptions. (Tr. 48). Plaintiff however actually performed the job at a medium level of exertion, according to the vocational expert. (Tr. 51). Based on a hypothetical containing the RFC eventually

---

[2] *See Carey*, 230 F.3d at 146-47 ("[C]laimants should not be permitted to scan the record for implied or unexplained conflicts . . . and then present that conflict as reversible error, when the conflict was not deemed sufficient to merit adversarial development in the administrative hearing."); *Masterson v. Barnhart*, 309 F.3d 267, 274 (5th Cir. 2002) (dismissing assignment of error regarding VE's testimony where claimant has opportunity to raise argument before the ALJ, but failed to do so).

adopted by the ALJ, the VE testified that Plaintiff could do the job of residence supervisor at it is generally performed in the national economy. (Tr. 48, 51).

Considering the VE's testimony and Plaintiff's RFC for a limited range of light work, the ALJ found that Plaintiff could no longer perform his past relevant work as he actually performed it. (Tr. 27). However, Plaintiff was found capable of performing his past work as a residence supervisor as it is generally performed in the national economy because "[t]his work does not require the performance of work-related activities precluded by the claimant's residual functional capacity." (Tr. 27). The Court finds this determination was supported by substantial evidence.

To determine whether Plaintiff could perform his past relevant work, "the ALJ was required to assess the physical demands of that work." *Orphey v. Massanari*, 268 F.3d 1063, at *1 (5th Cir. 2001). "This determination may rest on descriptions of past work as actually performed or as generally performed in the national economy." *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). In other words, the "mere inability of a claimant to perform certain requirements of his past job does not mean that he is unable to perform 'past relevant work' as that phrase is used in the regulations[.] [R]ather, the Commissioner may also consider the description of the claimant's past work as such work is generally performed in the national economy." *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). Here the ALJ considered the VE's testimony regarding Plaintiff's past relevant work and found it consistent with the definition provided in the DOT. (Tr. 27). The ALJ then found that the requirements of Plaintiff's past relevant work, as it is generally performed in the national economy, did not exceed the exertional demands of the RFC assessed by the ALJ. (Tr. 27). Plaintiff has not challenged the ALJ's RFC assessment, or his finding that Plaintiff's RFC is consistent with the ability to

perform the position of residence supervisor as it is generally performed in the national economy.

The Court has already determined that Plaintiff's argument classifying his past relevant work as a composite job lacks merit. Because Plaintiff has not otherwise raised any challenges to the ALJ's finding that Plaintiff is capable of performing his past relevant work as generally performed, the Court finds substantial evidence supports the ALJ's finding at step four, as well as his ultimate finding that Plaintiff is not disabled.

### D. Hearing Notification

Finally, Plaintiff argues that the ALJ erred in failing to inform him prior to the hearing that the medical expert would testify by telephone. (R. Doc. 12 at 18-19). In administrative proceedings before the Commissioner, "procedural perfection is not required, and an adjudication of the Commissioner is not to be vacated unless a substantial right of the claimant has been adversely affected." *Jones v. Astrue*, 851 F. Supp. 2d 1010, 1015 (N.D. Tex. 2012). Otherwise, any error is considered harmless. As the Fifth Circuit has explained, "[t]he major policy underlying the harmless error rule is to preserve judgments and avoid waste of time." *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988).

Here, Plaintiff merely points out this error. Fatal to his argument, he does not suggest or in any way claim that any error by the ALJ adversely affected his substantial rights. In other words, the error was harmless and Plaintiff's appeal must be dismissed on this point as well.

## V. CONCLUSION

For the reasons given above, the Court **RECOMMENDS** that the decision of the Commissioner be **AFFIRMED** and Plaintiff's appeal be **DISMISSED with prejudice**.

Signed in Baton Rouge, Louisiana, on August 6, 2015.

_____
**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**